UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL UNIONS, SECURITY
POLICE AND FIRE PROFESSIONALS
OF AMERICA, (SPFPA) an International Union,
and DAVID L. HICKEY, the International
President of SPFPA,

    Plaintiffs,

v.                                                                  Case No. 19-10743

STEVE MARITAS, an individual, and           HON. AVERN COHN
LAW ENFORCEMENT OFFICERS
SECURITY UNION, an unincorporated
union, CALVIN WELLS, JAMES BURKE,
and BRIKENER JEAN-GILLES,

    Defendants.
_____/

**MEMORANDUM AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
OR TRANSFER VENUE (Doc. 3)
AND
DISMISSING JAMES BURKE AND BRIKENER JEAN-GILES
AND
DENYING DEFENDANTS' MOTION TO CHANGE VENUE**

**I. Introduction**

This is a defamation and tortious interference case. Plaintiffs are David Hickey (Hickey) and International Unions, Security Police and Fire Professionals of America (SPFPA). SPFPA is an unincorporated international union doing business in Michigan and elsewhere. Hickey is the President of SPFPA and a resident of Michigan. Defendants are Law Enforcement Officers Security Union (LEOSU), Steve Maritas (Maritas), the founder and CEO of LEOSU, LEOSU board members Calvin Wells (Wells), James Burke (Burke), and Brikener Jean-Gilles (Jean-Gilles). LEOSU is a rival

union with locals in various states and is headquartered in New York.  Wells is a resident of Pennsylvania.  Maritas, Burke, and Jean-Gilles are residents of New York.

SPFPA says that beginning in late 2017, LEOSU began a campaign of publishing defamatory statements on the internet regarding SPFPA.  SPFPA says that this campaign has been damaging and has continued to the present day.

Before the Court is defendants' motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and/or for change of venue under 28 U.S.C. § 1404(a). (Doc. 3).  For the reasons which follow, the motion will be granted in part and denied in part.  Burke and Jean-Gilles will be dismissed for lack of personal jurisdiction. Defendants' motion to change venue will be denied.

## II.  Background

### A.

SPFPA is a labor union which represents over 16,000 security, police, and fire professionals.  It has roughly 175 local unions.  LEOSU is also a labor union that represents security, police and fire professionals.  Maritas was employed by SPFPA in Michigan for approximately eleven years before being terminated. (Plaintiffs' Opposition, Exhibit 1, Hickey Affidavit at ¶ 1).

The complaint states that shortly before being terminated, Maritas founded a rival union known as Federal Protective Service Officers of America (FPSOA)[1] and that Maritas initially began defaming SPFPA through FPSOA.  The complaint also says that Maritas' job performance with SPFPA deteriorated and he became subordinate, presumably due to his involvement with FPSOA.  He was terminated by SPFPA

---

[1] FPSOA is not a defendant and it appears that Maritas is no longer involved with FPSOA.

2

effective February 7, 2013. After his involvement with FPSOA, Maritas founded LEOSU.

**B.**

There are three counts listed in the complaint, each of which will be discussed further.

- Count I – Defamation
- Count II – Tortious Interference
- Count III – Preliminary Injunctive Relief

In Count 1, SPFPA says that LEOSU's statements were harmful, disparaging, defamatory and false. Complaint at p.8 ¶ 20. It also says that LEOSU knew or had reason to know that the statements would be published, and that they acted either negligently or with actual malice. Id. at ¶ 22. A number of examples of these statements are set forth in the complaint as follows:

- "SPFPA the true authority of corrupt security police unions" (10/24/2018) Id. at p. 4 ¶ 16.
- "Have you ever wondered why SPFPA Officials are not answering your phone calls" (Image on man on toilet in jail cell) (10/31/2018) Id.
- "SPFPA has a long history of corruption and embezzlement" (Image of man in cuffs) (10/27/2018) Id.
- "It's amazing how all these people in coverup media roles end up linked to pedophilia and Satanism" (10/28/2017) Id. at p. 5.
- "Hickey is living large on his members dues money" (5/4/2018) Id.

It is also alleged that LEOSU is using multiple websites, YouTube channels, and various social media accounts to publish defamatory statements. (Plaintiffs' Opposition, Exhibit 1, Hickey Affidavit at ¶ 4). These statements have been posted on the internet by LEOSU in what is alleged to be an attempt to defame SPFPA.

In Count II, it is alleged that LEOSU deliberately and maliciously spoke to SPFPA union members and told them that SPFPA was corrupt. Id. at p. 9 ¶ 29. Further, it is

alleged that the statements were false and intended to harm and destroy the relationship between SPFPA and its local unions and members. Id. at ¶ 30.

Finally, in Count III, SPFPA asks for injunctive relief, focusing on the destruction of their reputation and business relationships which resulted from the defamatory statements of LEOSU.

### III. Legal Standard

#### A.

The plaintiff bears the burden of establishing that jurisdiction exists when bringing an action in federal court. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Once the action is brought, it is up to the discretion of the district court to either; "decide the motion upon the affidavits alone; permit discovery in aid of deciding the motion; or conduct an evidentiary hearing to resolve any apparent factual questions." Theunissen, 935 F.2d at 1458.

#### B.

When the Court does not conduct an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction. Kroger Co. v. Malease Foods Corp., 437 F.3d 506, 510 (6th Cir. 2006). There has been no evidentiary hearing in this case. "[W]e do not weigh the facts disputed by the parties but instead consider the pleadings in the light most favorable to the plaintiff, although we may consider the defendant's undisputed factual assertions." Conn v. Zakharov, 667 F.3d 705, 711 (6th Cir.2012) (emphasis added). Since there has been no evidentiary hearing, the motion

needs to be decided based upon the complaint and the affidavits submitted and in favor of SPFPA.

### IV. Personal Jurisdiction

#### A. In General

**1.**

All Defendants challenge the assertion that this Court has personal jurisdiction over them. In order to determine if personal jurisdiction is appropriate, a court must examine both the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment. In Michigan, a plaintiff's burden of showing that a defendant can be called to answer a complaint is "relatively slight" where there has been no jurisdictional discovery and no evidentiary hearing. Vangheluwe v. Got News, LLC, 365 F. Supp. 3d 850, 856 (E.D. Mich. 2019). Plaintiffs only need to make a prima facie showing that jurisdiction exists and pleadings and affidavits must be viewed in the light most favorable to the them. Id.

**2.**

In Michigan, there are two long arm statutes which authorize an exercise of personal jurisdiction over non-resident defendants. 1) General personal jurisdiction exists over any corporation that is incorporated in Michigan, consents to jurisdiction, or engages in a continuous and systematic business activity within the state. Mich. Comp. Laws § 600.711. 2) Limited personal jurisdiction may be exercised over a defendant who has developed certain minimum contacts with the forum state but only over the claims which arise from or relate to those contacts. Mich. Comp. Laws § 600.715; Theunissen v. Matthews, 935 F.2d at 1460 (6th Cir. 1991).

5

**3.**

This case involves limited personal jurisdiction. Michigan's Long Arm Statute describes the specific circumstances where limited personal jurisdiction may be exercised over an individual:

> (1) The transaction of any business within the state.
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of real or tangible personal property situated within the state.
> (4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
> (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
> (7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

M.C.L. § 600.705.

The Michigan Long Arm Statute parallels the requirements of the Due Process clause. When a state's long-arm statute reaches to the same limits as the Due Process Cause, the two inquiries merge and the court only needs to decide whether asserting personal jurisdiction violates constitutional due process. Intera Corp., 428 F.3d 605, 616 (citing Aristech Chem. Intl. v. Acrylic Fabricators, 138 F.3d 624, 627 (6th Cir. 1998)). Since Michigan's Long Arm statute reaches the limits of the Due Process clause, the Court only needs to perform one analysis.

**4.**

The Sixth Circuit uses a three-part test in determining whether, consistent with due process, a court may exercise limited personal jurisdiction over a defendant: 1) the

defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence to occur there; 2) the cause of action must arise from the defendant's activities there; and 3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over him reasonable. So. Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968). Each of the three prongs is discussed further below.

First, in regards to purposeful availment, a defendant must do some act where it purposefully avails itself of the privilege of doing business in Michigan. Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985). The purposeful availment requirement protects a defendant from being subject to a court's jurisdiction as a result of "random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Id. at 475. Basically, there must be a substantial connection between a defendant's conduct and the state such that the defendant should reasonably anticipate being hauled into court there. Id. at 474.

Second, the cause of action must arise from a defendant's activities in the forum state. So. Machine Co. v. Mohasco Industries, Inc., 401 F.2d at 381. Personal jurisdiction should not be looked at as a punishment. Id. at 384. Its assumption is based on the interest of the state in either resolving business differences before they cause damage or providing a remedy once damage has occurred. Id. When a defendant participates in activities in a state and those activities arise to a cause of action, the state has a clear interest in that action.

Third, a court must look at the reasonableness of asserting personal jurisdiction based on a defendant's connection with the forum state. Id. at 381. The factors to consider in determining reasonableness include the burden on a defendant to appear in the forum state, the shared interest of the states in furthering social policies, the plaintiff's interest in obtaining relief, and the interstate judicial system's interest in obtaining the most efficient resolution of the controversy. Audi AG v. D'Amato, 341 F. Supp. 2d 734, 748 (E.D. Mich. 2004). It is important to note that there is an inference that if the first two elements of the test for personal jurisdiction are met, then jurisdiction is reasonable. Id.

## B. Personal Jurisdiction and the Internet

**1.**

In regards to the internet, the level of interactivity of a website determines whether personal jurisdiction is appropriate for an out-of-state defendant. Cybersell, Inc., v. Cybersell, Inc., 130 F.3d 414, 418-19 (9th Cir. 1997). There are three categories of interactivity for a website, commonly referred to as the "Zippo sliding scale." See, e.g., Zippo Mfg. Co. v. Zippo DOT Com, 952 F.Supp. 1119 (W.D. Pa. 1997).

The first category is a highly interactive website, which gives others the ability to download and enter into contracts. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1264 (6th Cir. 1996). This category is sufficient for a Court to exercise personal jurisdiction over a defendant. Id.

The second category is "a middle ground where information can be exchanged between the viewer and the host computer. In such a case, a court examines the level of interactivity and the commercial nature of the exchange of the information." Zippo,

952 F.Supp. at 1124; see Citigroup Inc., v. City Holding Co., 97 F.Supp.2d 549, 564-65 (S.D.N.Y. 2000).

The last category is where a defendant makes information available on an otherwise passive website. Marynard v. Philadelphia Cervical Collar Co., Inc., 18 F. App'x 814, 816-17, 2001 WL 929708 (Fed. Cir. 2001) (citing Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419-20 (9th Cir. 1997); Mink v. AAAA Dev. LLC, 190 F.3d 333, 336-37 (5th Cir. 1999)). A "passive" website is one that simply provides information; customers cannot transact business (e.g., purchase products) on a passive website. Marynard,18 F. App'x 814, 816-17, 2001 WL 929708 (Fed. Cir. 2001). A "passive website is insufficient to establish purposeful availment for the purpose of due process." McGill v. Gourmet Technologies, Inc., 300 F. Supp. 2d 501 (E.D. Mich. 2004).

**2.**

The complaint alleges that LEOSU is using various websites, multiple YouTube channels, and various social media accounts to publish defamatory statements. (Plaintiffs' Opposition, Exhibit 1, Hickey Affidavit at ¶ 4). The various websites' URL's[2] are "http://spfpacorruption.blogpost.com/," "https://www.leosu.org/," and "https://unionsforsecurityguards.com/." It is not clear which social media accounts SPFPA says that LEOSU is using, so whether or not those specific accounts would allow jurisdiction under the Zippo test is undetermined. YouTube is considered a passive website under the Zippo test since it simply provides information to viewers, so the statements made by LEOSU on YouTube alone would not be enough to create

---
[2]A uniform resource locator (URL) is the address of a resource on the Internet. A URL indicates the location of a resource as well as the protocol used to access it. See https://www.techopedia.com/definition/1352/uniform-resource-locator-url (last visited July 29, 2019).

personal jurisdiction in Michigan. A majority of the defamatory statements that SPFPA alleges to be defamatory are on YouTube, including the one online post that specifically mentions Michigan in the title.

Regarding the three websites in the complaint, the first one, "http://spfpacorruption.blogpost.com/," no longer seems to be in operation. However, SPFPA attached a screenshot of a post from the website as an exhibit. The screenshot is an attack on SPFPA President Hickey and suggests that he has an incestuous relationship with his daughter. Since the website can no longer be accessed, no determination can be made on whether the website would create personal jurisdiction under the Zippo test.

The second website, "https://www.leosu.org/," seems to fall under the "middle ground" category of the Zippo test. On this website, users can submit online membership applications and "submit breaking stories." When a website falls under this category, the court must examine the level of interactivity and the nature of the exchange of information. Zippo, 952 F. Supp. at 1124. Here, the activity available to users is minimal in comparison to the website as a whole and user activity has no relation to the suit at hand, so this website should not submit LEOSU to personal jurisdiction.

The final website, "https://unionsforsecurityguards.com/," falls into the category of a passive website under the Zippo test. Similar to YouTube, this website simply providers user with information. There is no option on the website that would allow users to conduct any sort of business or interact in any way. Since this is a passive website, it is not sufficient to meet the purposeful availment prong of personal

jurisdiction under Zippo.

Even though numerous defamatory statements about SPFPA have been posted on multiple websites, YouTube channels, and social media accounts, this alone is not enough to create personal jurisdiction. The nature of the websites and the YouTube channels is simply "middle ground" or "passive" under the Zippo test and therefore insufficient to establish personal jurisdiction. However, as will be discussed, the internet actions of LEOSU are not the only factors to be considered in determining whether personal jurisdiction exists.

### C. The Effects Doctrine

**1.**

The Calder effects test applies. In Calder v. Jones, 465 U.S. 783 (1984), an actress, Shirley Jones, filed a libel action in California when the National Enquirer published an article stating that she was an alcoholic. Jones sued the author and the editor of the article. The Supreme Court held that the "effects" of the defendants' intentional tortious conduct were sufficient for the California courts to exercise jurisdiction over them since the defendants could expect the harm of their conduct to be felt in California:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of [the plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

465 U.S. at 788-89, 104 S. Ct. at 1486-87.

The Supreme Court concluded that the defendants "reasonably anticipate[d] being haled into court [in California]" because they knew the article "would have a

potentially devastating impact upon [the plaintiff]" and that the "brunt of that injury would be felt by [the plaintiff] in the State in which she lives and works and in which the National Enquirer has its largest circulation."  465 U.S. at 788-89, 104 S. Ct. at 1486-87.

**2.**

Several courts, including some in this district, have construed the Supreme Court's decision in Calder as setting forth three requirements for the effects test to apply. First, the defendant must be charged with intentional actions, rather than "'mere untargeted negligence.'"  Ford Motor Co. v. Great Domains, Inc., 141 F. Supp. 2d 763, 773-74 (E.D. Mich. 2001)(quoting Calder, 465 U.S. at 789, 104 S. Ct. at 1487); Audi AG, 341 F. Supp. 2d at 745.  Second, the brunt of the injury must have been felt in the forum state.  Great Domains, 141 F. Supp. 2d at 774; Audi AG, 341 F. Supp. 2d at 745.  Third, the defendant's acts must have been expressly aimed at the forum state. Great Domains, 141 F. Supp. 2d at 774; Audi AG, 341 F. Supp. 2d at 745.

Here, the three requirements under Calder are satisfied.  First, LEOSU is charged with intentional actions, not "mere untargeted negligence."  The counts in this case are defamation, tortious interference, and preliminary injunctive relief.  Complaint at p.8-10, ¶¶ 19-36.  Second, the brunt of the injury is felt by SPFPA in Michigan, as it is located here.  Third, LEOSU's actions were expressly aimed at the forum state. LEOSU's actions and connections targeted at Michigan are as follows:

- LEOSU has posted numerous articles and videos that specifically target SPFPA in Michigan. (See Plaintiffs' Opposition p. 3 ¶ 14).
- LEOSU has attempted to recruit SPFPA's Michigan members away from SPFPA and to LEOSU, including, but not limited to, members of SPFPA working at Greektown Casino and Motor City Casino. Id. at ¶ 15.
- LEOSU has encouraged Michiganders to picket outside of SPFPA's headquarters in Roseville, Michigan. Id. at ¶ 16.

12

- LEOSU is involved in a contractual business relationship with Professional Law Enforcement Association (PLEA), a litigation insurance company offering insurance for law enforcement professionals. PLEA is located in Troy, Michigan. Id. at ¶ 17.

Thus, under Calder, it is reasonable for LEOSU to be haled into Court in Michigan.

**3.**

As to the individual defendants, SPFPA only mentions Maritas and Wells as having direct contacts with Michigan. Both are alleged to have been behind the creation of the websites and/or blog postings targeting SPFPA. This is sufficient to make out a prima facie case of jurisdiction. SPFPA, however, has no allegations as to Burke or Jean-Gilles which would tie them to Michigan or LEOSU's actions. As such, it is not reasonable to exercise personal jurisdiction over Burke or Jean-Gilles.[3]

**V. Venue**

Defendants alternatively move for a change of venue. A court may transfer an action under 28 U.S.C. § 1404(a) if "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." Kepler v. ITT Sheraton Corp., 860 F.

---

[3] Additionally, as SPFPA has pointed out, LEOSU's actions after being sued appear to show an attempt to downplay or back track on its ties to Michigan. For example, LEOSU has a contract with PLEA for litigation insurance for their union members. PLEA is located in Troy, Michigan. Initially, LEOSU touted their relationship with PLEA and posted an article on their website stating that they were the first union of their kind to offer their members legal defense. Since the filing of this lawsuit, LEOSU has attempted to remove the posted article. Even though the actual post has been removed, the URL is still available for viewing. See: https://www.leosudc.org/singlepost/2018/08/15/LEOSU-DC-Becomes-the-First-Security-Union-in-the-Nation-to-Offer-its-Members-A-Legal-Defense-Fund-Related-to-Civil-Criminal-Duty-Related-Coverage-Through- PLEA. [Ex. 1, Hickey Affidavit, ¶ 8 (emphasis added)]. Also, after filing the instant motion, LEOSU added a "disclaimer" to the bottom of their website which says "LEOSU does not, nor does it seek to organize in the state of Michigan."

Supp. 393, 398 (E.D. Mich. 1994) (internal citation omitted). In determining whether transfer is proper, courts consider the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

IFL Group v. World Wide Flight Servs., 306 F. Supp. 2d 709, 712 (E.D. Mich. 2004) (citing Overland, Inc. v. Taylor, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000)).

Defendant bears the burden of showing that transfer of venue is appropriate. Id. at 714. Plaintiff's choice of forum deserves "foremost consideration" and should not be disturbed unless the balance of factors strongly favors defendant. West Amer. Insurance Co. v. Potts, No. 89–6091, 1990 WL 104034 at *2 (6th Cir. July 25, 1990) (unpublished) (citing Nicol v. Koscinski, 188 F.2d 537 (6th Cir. 1951)).

Here, defendants do not reside in Michigan and plaintiffs concede that there are proper alternative venues for this action. However, the events in this case took place and had significant effects in Michigan. As seen from the personal jurisdiction analysis, defendants' focus on the physical location of where they were sitting when they posted the defamatory YouTube videos is misplaced. This case is not factually complex, and there should be no problems of proof or the convenience of witnesses, because documentary evidence lies in Michigan and other states. Moreover, "because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." Burger King v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting

McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).  Plaintiffs brought this lawsuit in Michigan not to inconvenience defendants, but because defendants aimed their defamatory statements and videos at Michigan, and at least with respect to Maritas, traveled to Michigan solicit business away from SPFPA and through LEOSU's business relationship with PLEA.  There is no reason for LEOSU, Maritas or Wells to claim that it would be unfair for them to need to travel to Michigan for this litigation.  See Superior Consulting Co. v. Walling, 851 F. Supp. 839, 845 (E.D. Mich. 1994) ("[T]ransferring venue to Texas would simply have exchanged the inconvenience of one party for that of the other . . . )  The balance of conveniences does not favor defendants' request to transfer venue, let alone strongly favor it.  Thus, plaintiffs' choice to litigate this case in Michigan will not be disturbed.

## VI.  Conclusion

For the reasons stated above, LEOSU's motion to dismiss for lack of personal jurisdiction is GRANTED IN PART AND DENIED IN PART.  LEOSU's motion to change venue is DENIED.

SO ORDERED.

S/Avern Cohn<br>
AVERN COHN<br>
UNITED STATES DISTRICT JUDGE

Dated: 8/1/2019
     Detroit, Michigan