UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL UNIONS,
SECURITY POLICE AND FIRE          Case No. 2:19-cv-10743
PROFESSIONALS OF AMERICA,
et al.,                           HONORABLE STEPHEN J. MURPHY, III

                Plaintiffs,

v.

MARITAS, et al.,

                Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND
## DENYING IN PART MOTION TO EXCLUDE EVIDENCE [54]

Plaintiffs International Unions Security Police and Fire Professionals of America (SPFPA) and David L. Hickey (collectively, the "SPFPA Parties") sued Defendants Law Enforcement Officers Security Unions (LEOSU), Calvin Wells, and Steven Maritas (collectively, the "Maritas Parties") for defamation, false light, tortious interference with a contract or advantageous business relationship or expectancy, knowing misrepresentation of copyright claims under the Digital Millennium Copyright Act (DMCA), and for injunctive relief. ECF 13.[1] About a year and a half after the SPFPA Parties filed the present case, ECF 1, the Maritas Parties filed a separate lawsuit in the Eastern District of Michigan. *Maritas v. Int'l Unions,*

_____

[1] The case was originally assigned to Judge Avern Cohn. It was then reassigned to then-District Judge Stephanie Dawkins Davis on January 2, 2020. On June 16, 2022, after Judge Dawkins Davis was elevated to the Sixth Circuit, the case was reassigned to the Court.

*Sec. Police & Fire Pros. of Am*. No. 4:20-cv-12544, (E.D. Mich. Sept. 16, 2020) ("*Maritas II*").[2] Confusingly, the Maritas Parties sued the SPFPA Parties based on the *same five causes of action* brought by the SPFPA Parties in *Maritas I. Maritas II*, ECF 1, PgID 4–9;[3] *see Maritas II*, ECF 16, PgID 1649 ("Much of the language in the [complaint] mirrors or is identical to the language in the SPFPA amended complaint. . . . Plaintiffs likely used the SPFPA complaint as a template for their [complaint].").

The Maritas Parties amended the *Maritas II* complaint in November 2020, and the amended complaint raised the same five claims as the original complaint. *Maritas II*, ECF 8. The SPFPA Parties then moved for partial dismissal of the amended complaint, *Maritias II*, ECF 12, and Judge Dawkins Davis granted in part and denied in part the motion, *Maritias II*, ECF 16.

Because *Maritas I* and *Maritas II* were both assigned to Judge Dawkins Davis and involved common questions of law or fact, Judge Dawkins Davis consolidated the two matters in December 2021. *Maritas I*, ECF 41 (citing Fed. R. Civ. P. 42(a)); *Maritas II*, ECF 25 (same). Thereafter, all filings involving both actions were filed on the *Maritas I* docket. *Maritas I*, ECF 41, PgID 1061.

---

[2] The pre-consolidation filings in *Maritas II* were not refiled on the docket of the present case. In the interests of clarity and concision, the Court will refer to the present case from 2019 as *Maritas I* and the 2020 case as *Maritas II. Maritas II* was originally assigned to Judge Dawkins Davis.

[3] The Maritas Parties also sued Defendant Dwayne Phillips, who was not a Plaintiff in the *Maritas I* case.

After Judge Dawkins Davis granted in part the SPFPA Parties' motion to dismiss, the SPFPA Parties answered the complaint filed by the Maritas Parties in *Maritas II*. *Maritas I*, ECF 44. The SPFPA Parties also counterclaimed[4] for (i) breach of a 2013 contract, (ii) breach of a 2016 contract, (iii) common law trademark infringement, and (iv) unfair competition. *Id.* at 1076–87. The Maritas Parties answered the counterclaims. *Maritas I*, ECF 48.

The parties then filed the following three motions that were not addressed prior to reassignment: (1) a motion for summary judgment by the SPFPA Parties (as to the amended complaint in *Maritas II*, ECF 8), ECF 49; (2) a motion for summary judgment by the Maritas Parties (as to the counterclaims in *Maritas I*, ECF 44), ECF 50; (3) and a motion to exclude evidence from the summary judgment briefing, ECF 54. This order will resolve the motion to exclude evidence from the summary judgment briefing, ECF 54.

## BACKGROUND

After the parties fully briefed the competing summary judgment motions, ECF 49; 50; 51; 52; 53; 55, the SPFPA Parties moved to exclude four categories of evidence

---

[4] The counterclaims were raised against Steve Maritas and non-party United Federation LEOS-PBA. Although titled "Third-Party Complaint," the claims raised by the SPFPA Parties should have been filed as counterclaims, since the claims were raised against an opposing party from the *Maritas II* complaint. *See Maritas II*, ECF 8 (naming Steve Maritas as a Plaintiff); Fed. R. Civ. P. 13(b). Indeed, the claims raised in the purported "Third-Party Complaint" were not raised "on a nonparty who is or may be liable to [the SPFPA Parties] for all or part of the claim[s] against it." Fed. R. Civ. P. 14(a)(1). Thus, the Court will refer to the claims brought in ECF 44, PgID 1076–87 as counterclaims. *See also* ECF 54, PgID 2017 (SPFPA Parties referring to breach of contract claims as "counterclaims").

3

offered by the Maritas Parties under Federal Rule of Civil Procedure 37(c) and

Federal Rule of Evidence 802:

[1]   A series of text messages [that the] Maritas Parties claim
        supports their tortious interference claim, even though [the]
        Maritas Parties failed to disclose them during discovery and those
        text messages are inadmissible as hearsay.
[2]   An affidavit executed by Pasquale Cascione, a witness [the]
        Maritas Parties never disclosed as having any relevant
        information, and containing inadmissible hearsay.
[3]   An affidavit executed by [Mr.] Maritas that contains inadmissible
        hearsay.
[4]   A fraudulent version of the 2016 settlement agreement between
        SPFPA and [Mr.] Maritas.

ECF 54, PgID 1999. The parties briefed the motion. ECF 56; 57. For the reasons

below, the Court will grant in part and deny in part the motion to exclude evidence.[5]

## LEGAL STANDARD

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a

witness as required by Rule 26(a) or (e), the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at a trial,

unless the failure was substantially justified or is harmless." "The party subject to

potential sanctions carries the burden to prove harmlessness or substantial

justification." *Avery v. Neverson*, No. 18-cv-11752, 2023 WL 2263854, at *5

(E.D. Mich. Feb. 28, 2023) (citing *Roberts v. Galen of Va.*, 325 F.3d 776, 782 (6th Cir.

2003)). "To determine whether a Rule 26 violation is harmless or substantially

justified under Rule 37(c)(1)," the Court must weigh five factors, which "separate

---

[5] Based on the parties' briefing, the Court will resolve the motion on the briefs without
a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

honest, harmless mistakes from the types of underhanded gamesmanship that warrants the harsh remedy of exclusion." *Id.* (cleaned up). The five factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (citation omitted).

Under Federal Rule of Evidence 802, hearsay evidence is inadmissible "unless it satisfies one or more of the hearsay exceptions or is permitted by federal statute or [] Supreme Court rules." *Nusbaum v. Enlighten Fam. Chiropractic, LLC*, No. 19-cv-10223, 2023 WL 319782, at *13 (E.D. Mich. Jan. 19, 2023) (citations omitted). Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted." Fed. R. Civ. P. 801(c). "The proponent of a hearsay statement bears the burden of proving each element of a given hearsay exception or exclusion." *United States v. Day*, 798 F.2d 1217, 1221 (6th Cir. 1986) (citations omitted). And "hearsay evidence cannot be considered on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988), for the proposition that "[i]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment").

**DISCUSSION[6]**

The SPFPA Parties moved to exclude four categories of evidence offered by the Maritas Parties: text messages, the affidavit of Pasquale Cascione, the affidavit of Mr. Maritas, and the 2016 settlement agreement. The Court will address each category in turn.

I.   <u>Text Messages</u>

In their response to the SPFPA parties' summary judgment motion, ECF 51, the Maritas Parties relied on text messages sent to Mr. Maritas from third parties that described statements made by SPFPA. ECF 51, PgID 1591, 1605; ECF 51-6, PgID 1625–33 (exhibit of text messages). Most of the text messages appeared for the first time in the litigation as attachments to the Maritas Parties' response brief. The Maritas Parties did not produce the messages within their initial disclosures, nor did they identify the individuals who had sent the messages to Mr. Maritas during discovery. *See* ECF 54, PgID 2009 ("[N]othing anywhere in their Initial Disclosures would have given [the] SPFPA Parties even the slightest idea that [the] Maritas Parties would use correspondence from local LEOSU members to support their tortious interference claim."). Instead, the Maritas Parties broadly stated in their initial disclosures that "[o]ne or more current or former LEOSU local union member or officer, to be identified," would be an "individual likely to have discoverable information." ECF 54-2, PgID 2023, 2025. And those individuals were "expected in

---

[6] For the rest of this Order, the citations to the record refer to *Maritas I* unless otherwise noted.

part to have information concerning . . . [t]he lack of any truthfulness to SPFPA's statements against Steve Maritas." *Id.* at 2025. The members or officers "to be identified" were never identified in any supplemental disclosure. *Id.* at 2025; s*ee* ECF 54, PgID 2008–09.

The SPFPA Parties argued that the text messages should be excluded as evidence because the messages and the individuals who sent them were never identified before the summary judgment briefing. ECF 54, PgID 2008–11. The Maritas Parties responded that some of the text messages were attached to their complaint, *Maritas II*, ECF 8-4, PgID 660–63, and that the other text messages do not "differ from the factual materials provided in the texts within the complaint." ECF 56, PgID 2186. The Maritas Parties also contended that "SPFPA never asked or requested for any additional specific names despite being in possession of the text messages used by LEOSU in its briefing." *Id.* at 2185. Thus, according to the Maritas Parties, the SPFPA Parties are at fault for the deficiency.

The Court will first explain why most of the relevant text messages must be excluded, because the Maritas Parties failed to disclose them, under Civil Rule 37(c)(1). After, the Court will discuss whether the remaining messages must be excluded as inadmissible hearsay evidence under Evidence Rule 802.

### A.   *Failure to Disclose Under Civil Rule 37(c)(1)*

Two reasons support the finding that the seven new text messages were not properly disclosed under Rule 26(a) or (e). First, the Maritas Parties attached nine text-message exhibits to their summary judgment response brief. ECF 51-6, PgID

1625–33. Only two of them were attached to the complaint. *Compare id.*, *with Maritas II*, ECF 8-4, PgID 660–63. And both messages lack the personal commentary that is present in the other seven text messages offered by the Maritas Parties. *Compare Maritas II*, ECF 8-4, PgID 660, 663, *with* ECF 51-6, PgID 1625–30, 1632. The seven new text messages therefore "differ from the factual materials provided in the texts within the complaint." ECF 56, PgID 2185–26. They were new disclosures made by the Maritas Parties at summary judgment. But the Maritas Parties may not "use any unproduced documents to prove or defend [their] case at summary judgment." *Hill v. United States*, No. 13-11713, 2014 WL 2968557, at *3 (E.D. Mich. July 2, 2014) (Cleland, J.) (quotation omitted). In sum, because the messages were not produced until summary judgment, and because the messages differ in content from the two messages attached to their complaint, the Maritas Parties may not now ambush the SPFPA Parties with the new messages at summary judgment.

Second, the Maritas Parties expressly stated in their initial disclosures that the local union members and officers who have relevant information bearing on SPFPA's statements against Mr. Maritas would "be identified." ECF 54-2, PgID 2025. Yet the individuals who sent the relevant text messages were never identified, even after the Maritas Parties obtained the messages. The Maritas Parties' failure to supplement their disclosures thus runs afoul of the clear duty to supplement under Rule 26(e)(1), and their attempt to shift the burden to the SPFPA Parties is unavailing. *See* ECF 56, PgID 2185–86.

Because the Court has found that the evidence was not disclosed in accordance with Rule 26(a) or (e), it must next determine whether the non-disclosure was nonetheless justified or harmless such that the evidence should not be excluded under Rule 37(c)(1). *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004) ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.") (quotation omitted). Accordingly, the Court must weigh the five *Howe* factors.

### 1.   *Surprise to the SPFPA Parties*

The first factor slightly supports exclusion. On the one hand, the new text messages were disclosed for the first time in the summary judgment response brief by the Maritas Parties, so the SPFPA Parties had no opportunity to brief (except in a seven-page reply brief, *see* E.D. Mich. L.R. 7.1(d)(3)(B)) whether the text messages raise a genuine issue of material fact as to the tortious interference claim. And since the text messages were not disclosed until after the dispositive motions were due, the SPFPA Parties had no opportunity to question anyone about the text messages. *See Howe*, 801 F.3d at 748 (explaining that a party's awareness of the evidence and a full opportunity to question the opposing party about the evidence are relevant considerations for the first factor).

On the other hand, the Maritas Parties disclosed four text messages in their complaint, which showed that Mr. Maritas had received information from individuals about what SPFPA was circulating about him. *See Maritas II* ECF 8-4, PgID 660–63. Thus, the SPFPA Parties were on notice as to the existence of at least some of the

text messages. As explained earlier, however, those text messages differed in content from the text messages attached to the summary judgment response brief. For instance, rather than a mere copied-and-pasted link, *Maritas II* ECF 8-4, PgID 660–62, the new text messages included back-and-forth messaging between Mr. Maritas and the senders, ECF 51-6, PgID 1625–30, 1632. And although one of the overlapping text messages included a short conversation, the messaging appeared to include only informative content rather than personal commentary. *See id.* at 1633. On balance, then, the new content would have been surprising to the SPFPA Parties, so the first factor favors exclusion.

### 2. The SPFPA Parties' ability to cure surprise

The second factor favors exclusion because, simply put, the SPFPA Parties can cure the surprise only if the Court were to reopen discovery. Discovery closed over a year ago. ECF 47, PgID 1113 ("Discovery Deadline is March 11, 2022."). Thus, reopening discovery at this late stage in the litigation would be inequitable. At any rate, no party has asked for that remedy, and the Court will not sua sponte consider it here. *See* ECF 54-2, PgID 2008–12; ECF 56, PgID 2185–87.

### 3. Disruption of trial

The Court will pass over the third factor because it is inapplicable at the summary judgment stage and because the present case is not yet slated for trial. *See Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019) ("[J]udges need not apply *Howe*'s factors 'rigidly.'"); *see generally Howe*, 801 F.3d at 749 ("Third, we consider whether introduction of the evidence would disrupt the hearing or trial.").

### 4. *Importance of the evidence*

The fourth factor "cut[s] both ways." *Bisig*, 940 F.3d at 220. In the Maritas Parties' response brief, they explained that the text messages were one of the two main bases that support their tortious interference claim. *See* ECF 51, PgID 1605. Since the Maritas Parties identified the evidence as crucial to their tortious interference claim, the evidence appears to be "importan[t]" for the sake of the fourth factor. *Howe*, 801 F.3d at 748. And "[t]he more important the proof, the greater the effect of preclusion." *Bisig*, 940 F.3d at 220 (quotation omitted). Yet because the evidence was attached to a response brief, the SPFPA Parties had no opportunity to discuss it in their summary judgment motion despite its apparent importance to the tortious interference claim. The SPFPA Parties were therefore greatly "harm[ed] in [the] tardy disclosure." *See Bisig*, 940 F.3d at 220 (quotation omitted). Factor four thus "cut[s] both ways" and favors neither party. *Id.*

### 5. *The Maritas Parties' explanation for failure*

Last, and as already stated, the Maritas Parties failed to justify their failure to disclose the evidence. Principally, the Federal Rules of Civil Procedure required the Maritas Parties to supplement their discovery disclosures, yet they failed to do so despite having the text messages on hand in time for their summary judgment response brief. And the Maritas Parties did not suggest that the text messages became known to them only after the close of discovery. *See* ECF 56. In short, the fifth factor also favors exclusion.

Because three of the five *Howe* factors warrant exclusion and two factors lack weight here, the seven new text messages attached to the Maritas Parties' response brief, ECF 51-6, PgID 1625–30, 1632, must be excluded under Rule 37(c)(1). As for the remaining two text messages, the Court will next discuss whether they must be excluded as inadmissible hearsay evidence.

B.      *Hearsay Under Evidence Rule 802*

The Maritas Parties asserted that the text messages were "not being used for the truth of the matter asserted" but were being used to show "in the text [] that SPFPA was disseminating defamatory statements concerning Steve Maritas to LEOSU members." ECF 56, PgID 2187. The first text message, ECF 51-6, PgID 1631, is alleged to be a "[m]ass [t]ext [m]essage sent to potential and existing LEOSU members." ECF 51, PgID 1597–98 (citing *Maritas II*, ECF 8-4, PgID 660). Although unclear from the photograph, the Maritas Parties contended that the "text message" was sent by SPFPA. ECF 56, PgID 2186. The message would therefore be an opposing party statement under Federal Rule of Evidence 801(d)(2) and thus not hearsay. The Court will therefore not exclude that message as hearsay evidence.

But the second text message, ECF 51-6, PgID 1633, is hearsay. The Maritas Parties stated that the message was offered to show "that SPFPA was disseminating defamatory statements concerning Steve Maritas to LEOSU members." ECF 56, PgID 2187. The text message states that the SPFPA "video [is] now circulating to all PSO's." ECF 51-6, PgID 1633. The matter asserted is that the video about Mr. Maritas was being circulated by SPFPA. And the Maritas Parties wish to offer the

12

statement to show that SPFPA was circulating statements about Mr. Maritas. Thus, the message is offered to prove the truth of the matter asserted and is inadmissible hearsay evidence. The message must be excluded at summary judgment under Rule 802.

In sum, the Maritas Parties may rely on only one of the nine text messages they offered in their summary judgment response brief: the text message at ECF 51-6, PgID 1631. The other text messages are excluded under either Civil Rule 37(c)(1) or Evidence Rule 802.

## II.   Affidavit of Pasquale Cascione

The Maritas Parties moved for summary judgment on the SPFPA Parties' counterclaims. ECF 50. The SPFPA Parties responded. ECF 52. And the Maritas Parties replied. ECF 53. In the reply brief, the Maritas Parties included an affidavit from Pasquale Cascione to support their defense against the SPFPA Parties' trademark infringement claim. ECF 53, PgID 1979; ECF 53-3, PgID 1990. Cascione explained in the affidavit that the phrase "One Union, One Pride" had been used by the father of Mr. Maritas decades before SPFPA had coined the phrase. ECF 53, PgID 1979; ECF 53-3, PgID 1990. In the present motion, the SPFPA Parties argued that the affidavit of Cascione should be excluded under either Civil Rule 37(c)(1) or Evidence Rule 802. ECF 54, PgID 2012–13. The Court will address each rule in turn.

### A.   *Failure to Disclose Under Civil Rule 37(c)(1)*

The Maritas Parties conceded that they "did fail to disclose the identity of [Cascione] through discovery." ECF 56, PgID 2189. But they argued that the failure

"was justified" because they did not need his testimony until after the SPFPA Parties filed their summary judgment response brief. *Id.* at 2190. The Maritas Parties explained that they had planned to offer only the affidavit of Mr. Maritas, which stated that he was "the first party to place the phrase 'One Union, One Pride' into the stream of commerce to defeat SPFPA's common law trademark claim." *Id.* at 2189. But after the SPFPA Parties objected to "Maritas'[s] assertions as self-serving," they believed it became necessary to "seek[] the origination of the phrase." *Id.* (citation omitted). And in fact, the Maritas Parties "did not receive the affidavit from . . . Cascione until the very day [they] filed [their] reply brief." *Id.*

Because the Maritas Parties conceded that they failed to disclose the evidence during discovery, the Court must determine whether the failure was "harmless or substantially justified." *Avery*, 2023 WL 2263854, at *5. The Court will analyze the five *Howe* factors next. 801 F.3d at 748.

### 1.    *Surprise to the SPFPA Parties*

The first factor clearly favors exclusion. Based on the representations of the Maritas Parties, the identity of Cascione (and the information he relayed in his affidavit) surprised even the Maritas Parties. Indeed, they explained that they were "unaware of Pasquale Cascione['s] existence, or the extent of his knowledge related to the use of the phrase 'One Union, One Pride' prior to the execution of the affidavit," which they received on "the very day [they] filed [their] reply brief." ECF 56, PgID 2189. It follows that if the proponent of the evidence was surprised by the evidence,

the opposing party would likewise be surprised. Thus, the first factor advocates for exclusion.

2.    *The SPFPA Parties' ability to cure surprise*

The second factor also favors exclusion. Here again, the SPFPA Parties can cure the surprise only if the Court were to reopen discovery. Discovery closed over a year ago. ECF 47, PgID 1113 ("Discovery Deadline is March 11, 2022."). And reopening discovery at this late stage in the litigation would be inequitable. The Maritas Parties claimed that "any limited discovery [relating to the Cascione affidavit] would not harm SPFPA and the search for truth." ECF 56, PgID 2190. Not so. As will be explained under the fifth factor, the Maritas Parties lacked diligence in building their defense against the trademark infringement claim. Reopening discovery would therefore cause the SPFPA Parties to inequitably incur greater costs. The Court will not reopen discovery. The second factor thus favors exclusion.

3.    *Disruption of trial*

As stated above, the Court will pass over the third factor because it is inapplicable at the summary judgment stage and because the present case is not yet slated for trial. *See Bisig*, 940 F.3d at 220 ("[J]udges need not apply *Howe*'s factors 'rigidly.'"); *see generally Howe*, 801 F.3d at 749 ("Third, we consider whether introduction of the evidence would disrupt the hearing or trial.").

4.    *Importance of the evidence*

The Cascione affidavit appears to be crucial to the Maritas Parties' defense against the trademark infringement claim. The Maritas Parties stated that "once

SPFPA objected to [the Maritas Parties'] use of Steve Maritas's[s] assertions as self-serving, this *necessitated* [the Maritas Parties] seeking the origination of the phrase." ECF 56, PgID 2190 (emphasis added and citation omitted). Given that the Maritas Parties believed that the affidavit was "necess[ary]" to defend against the infringement claim, *id.*, the Court finds the affidavit to be an important piece of evidence. To be sure, the trademark infringement claim cannot survive if the Maritas Parties can show that SPFPA was not the first party to place the phrase "One Union, One Pride" into the stream of commerce. *See Janet Travis, Inc. v. Preka Holdings, L.L.C.*, 306 Mich. App. 266, 284 (2014) ("Trademark rights arise out of appropriation and use. Generally, the right belongs to one who first appropriates and uses the mark.").[7] And "[t]he more important the proof, the greater the effect of preclusion." *Bisig*, 940 F.3d at 220. Yet the evidence was first introduced in a *reply brief*. The SPFPA Parties therefore had no opportunity to consider or address the concededly "necess[ary] evidence." ECF 56, PgID 2190. The evidence is crucial to the case, so Defendants are greatly harmed by the late disclosure. Thus, factor four "cut[s] both ways" and favors neither party. *Bisig*, 940 F.3d at 220.

### 5.    *The Maritas Parties' explanation for failure*

The last factor also favors exclusion. The SPFPA Parties filed their trademark infringement claim in December 2021. ECF 44, PgID 1084–86. Thus, the issue of who

---

[7] Because the SPFPA Parties sued the Maritas Parties for common law trademark infringement, Michigan law applies. ECF 44, PgID 1084–86 (common law trademark infringement counterclaim); *see* ECF 50, PgID 1474 (applying Michigan law); ECF 52, PgID 1742–48 (same).

first coined the phrase "One Union, One Pride" became immediately relevant. *Id.* at 1080; *see Janet Travis, Inc.*, 306 Mich. App. at 284 ("[T]he right [to a trademark] belongs to the one who first appropriates and uses the mark."). A reasonable defense strategy, then, would be to prove that "the origination of the phrase" predated SPFPA's use of the phrase. ECF 56, PgID 2190. In turn, a reasonably diligent defendant would have searched for a witness who could testify to the origination of the phrase, beyond the testimony of the defendant himself. Yet the Maritas Parties chose to rest on only the affidavit statements of Mr. Maritas. *See* ECF 56, PgID 2189. The Maritas Parties did not explain why they could not have obtained the testimony of Cascione during discovery. *See id.* at 2189–90. Because a reasonably diligent defendant would have searched for the testimony of someone like Cascione, and because there is no suggested reason that the evidence could not have been obtained during discovery, the Maritas Parties have failed to provide an adequate explanation for their failure to disclose the evidence before they filed the reply brief.

As with the text messages, three of the five *Howe* factors favor exclusion. The Court must therefore exclude the evidence under Civil Rule 37(c)(1).

   B.    *Hearsay Under Evidence Rule 802*

Even if the Court were not to exclude the evidence under Rule 37(c)(1), the Court would nonetheless exclude the evidence as inadmissible hearsay under Evidence Rule 802. The Maritas Parties argued that the information in the affidavit

would be hearsay, but that it would still be admissible under an exception to the hearsay rule. ECF 56, PgID 2190 (citing Fed. R. Evid. 804(a)(4)).

Under Evidence Rule 804(b), statements that are hearsay are admissible "if the declarant is unavailable as a witness." Rule 804(a)(4) explains that "[a] declarant is considered to be unavailable as a witness if the declarant . . . cannot be present to testify at the trial or hearing because of death." According to the Maritas Parties, the father of Mr. Maritas—the individual who allegedly first coined the "One Union, One Pride" phrase—"passed away many years ago." ECF 56, PgID 2190. Thus, the father is "unavailable" under Rule 804(a)(4).

But the analysis does not stop there. Once a declarant is found to be unavailable, the hearsay evidence is admissible only if it falls under one of the Rule 804(b) exceptions. There are six exceptions under Rule 804(b). The Maritas Parties did not explain which exception would apply to the statements in the affidavit. *See* ECF 56, PgID 2190. Instead, they ended the analysis based on only the threshold question of unavailability. And based on the Court's review of Rule 804(b), none of the six exceptions apply to the statements made by the father of Mr. Maritas. The affidavit of Cascione thus relies on hearsay statements and is inadmissible evidence under Rule 802.

III.   Affidavit of Mr. Maritas

In the summary judgment motion by the SPFPA Parties, an exhibit showed that at some point the Oakland County Sheriff's Office had issued a "WANTED" poster in search of Mr. Maritas. ECF 49-7. The exhibit was offered to show that

18

SPFPA's statements—that Mr. Maritas had "failed to make child support payments, leading to multiple arrest warrants" and that he had a criminal history—were true statements. ECF 49, PgID 1136, 1145, 1147–49. In response, the Maritas Parties offered an affidavit by Mr. Maritas that stated, "[SPFPA] falsely allege[d] that I owed child support and used materials which were created[,] to the best of my knowledge, at the behest of SPFPA and David Hickey, President of SPFPA." ECF 51-8, PgID 1640. And in his deposition, Mr. Maritas stated that he believed "the police created the [WANTED] poster," but that he was told by "[w]hoever the detective or police officer was" that "SPFPA was behind it." ECF 51-4, PgID 1622.

The SPFPA Parties moved to strike from the Maritas affidavit the testimony that suggested the WANTED poster was created "at the behest of SPFPA" because it was based on inadmissible hearsay. ECF 54, PgID 2013 (citing ECF 51-8, PgID 1640). In response, the Maritas Parties conceded that testimony about the conversation Mr. Maritas had with the Oakland County deputy regarding the WANTED poster would rely on hearsay statements. ECF 56, PgID 2191. But they also clarified that (1) the affidavit was not referring to the WANTED poster, and (2) the entire affidavit should not be stricken as inadmissible hearsay. *Id.* at 2190 ("Nowhere within Steve Maritas'[s] affidavit does it allege a *wanted poster* was created at the behest of SPFPA.") (emphasis added); *id.* at 2191 ("SPFPA seeks to have his sworn deposition testimony stricken as hearsay.").

To start, the SPFPA Parties moved to strike, specifically, Mr. Maritas's statement "that the WANTED poster was 'created, to the best of my knowledge, at

the behest of SPFPA.'" ECF 54, PgID 2013 (cleaned up). Thus, the Court need only determine whether that statement within the affidavit should be stricken as inadmissible hearsay. The second argument by the Maritas Parties is moot because the SPFPA Parties did not move to strike the entire affidavit as inadmissible hearsay.

Next, because the Maritas Parties claimed that the affidavit did not refer to the WANTED poster, the hearsay concerns of the SPFPA Parties are inapplicable. According to the Maritas Parties, the "materials which were created . . . at the behest of SPFPA" was a video that included the following slide:



ECF 56, PgID 2190–91 (citing ECF 51-11, PgID 1652). That slide does not reference the WANTED poster, *see* ECF 51-11, PgID 1652, and the affidavit likewise does not mention the WANTED poster, *see* ECF 51-8, PgID 1639–40. Thus, the deposition testimony of Mr. Maritas about his conversation with the Deputy regarding the WANTED poster is irrelevant to the affidavit. The Court will therefore not strike that statement from the affidavit of Mr. Maritas.[8]

---

[8] In ruling on the motions for summary judgment by both parties, the Court will proceed with the understanding that the affidavit of Mr. Maritas does not refer to the WANTED poster, as represented by the Maritas Parties. ECF 56, PgID 2190–91.

IV.     2016 Settlement Agreement

The SPFPA Parties lodged a serious accusation against the Maritas Parties as to the final category of evidence, the 2016 Settlement Agreement. ECF 54, PgID 2014–17. Specifically, the SPFPA Parties claimed that the Maritas Parties "perpetuat[ed] a fraud on the Court . . . by introducing [a] [f]ake [d]ocument to avoid summary judgment on SPFPA's breach of contract claim." *Id.* at 2014. They therefore moved for the Court to strike the document and to sanction the Maritas Parties for the alleged fraud. *Id.*

In their response to the Maritas Parties' summary judgment brief, the SPFPA Parties attached the 2016 Settlement Agreement and a declaration to support the authenticity of the document. ECF 52-13; *see* ECF 54, PgID 2014–15. Then, in their reply brief, the Maritas Parties attached their own version of the 2016 settlement agreement that included slightly different wording. *Compare* ECF 52-13, PgID 1952 ("Maritas shall honor the terms of the June 18, 2013 Settlement Agreement (Exhibit 2) *that do not have a temporal limitation*, specifically, Paragraph 2 . . . .") (emphasis added), *with* ECF 53-2, PgID 1987 ("*During this period*, Maritas shall honor the terms of the June 18, 2013 Settlement Agreement (Exhibit 2) specifically, Paragraph 2 . . . .") (emphasis added). In the reply brief, the Maritas Parties offered no evidence to suggest that the document was authentic. *See* ECF 53; 53-2; 53-3; 53-4; 53-5.

Later, in the briefing of the present motion, the Maritas Parties argued that the document was authentic and offered an affidavit by Mr. Maritas that was submitted in a Michigan State court case and stated, "[a]fter an extensive search of

[his] files at his local counsel's office, [Mr. Maritas] has obtained the actual '2016 Agreement,' signed and initialed by [Mr. Maritas]." ECF 56-6, PgID 2250. The Maritas Parties also argued that the motion to strike their version of the 2016 Settlement Agreement "must be denied as it clearly goes against the doctrine of collateral estoppel." ECF 56, PgID 2192. The Court will first address the issue of collateral estoppel. After, the Court will discuss whether the Court should strike the Maritas Parties' version of the 2016 Agreement as a fraudulent filing.

A.    *Collateral Estoppel*

Under the doctrine of collateral estoppel, or issue preclusion, parties are barred from relitigating "issues that have already been actually litigated and lost in a prior action." *Cobbs v. Katona*, 8 F. App'x 437, 438 (6th Cir. 2001) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) and *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir.1999)). "To determine the preclusive effect of a prior [S]tate court judgment, federal courts must apply the preclusion law of the [S]tate in which that prior judgment was rendered." *Lopez v. Union Carbide Corp.*, 83 F. Supp. 2d 880, 884 (E.D. Mich. 2000) (quotation omitted). Under Michigan law, collateral estoppel applies when three elements are met: (1) "a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment"; (2) "the same parties had a full and fair opportunity to litigate the issue"; "and (3) mutuality of estoppel." *Radwan v. Ameriprise Ins. Co.*, 327 Mich. App. 159, 166 (2018).

Collateral estoppel does not apply here because the issue of whether the 2016 Settlement Agreement offered by the Maritas Parties is an authentic document was

never "actually litigated and determined by a valid and final judgment." *Radwan*, 327 Mich. App. at 166. For one, the State court denied summary judgment on the breach of contract claim because "a question of fact exist[ed] relative to whether the Maritas Version of the 2016 Settlement Agreement is a 'fake' as claimed by SPFPA." ECF 50-11, PgID 1572. That order left the question of authenticity to the jury and was therefore not a final judgment. For another, the parties stipulated to dismiss *without prejudice* the breach of contract claim. ECF 50-3, PgID 1485 ("Plaintiff files this notice of stipulation of dismissal of Count II—Breach of Contract (2016 Agreement)—of Plaintiff's Complaint, without prejudice."). "A dismissal without prejudice is not an adjudication on the merits." *Wikol v. Select Com. Assets, LLC*, No. 355393, 2022 WL 4281551, at *6 (Mich. Ct. App. Sept. 15, 2022) (quoting *Yeo v. State Farm Fire & Cas. Ins. Co.*, 242 Mich. App. 483, 484 (2000)). Indeed, "a dismissal without prejudice is simply a permission slip to a party, allowing them to refile the same allegations in a separate action. But this permission slip does not carry with it an adjudication[,] [so] the doctrines of res judicata and collateral estoppel do not apply to the refiled claims." *Id.* (citing *Rinke v. Auto Moulding Co.*, 226 Mich. App. 432, 439 (1997)). All told, collateral estoppel does not bar the issue of whether the 2016 settlement agreement offered by the Maritas Parties is authentic.

B.   *Fraudulent Filing*

Based on the briefing and exhibits offered by both parties, there is insufficient evidence to find that the Maritas Parties have committed fraud on the Court. Indeed, the strongest argument the SPFPA Parties lodged to support their argument of fraud

was that the Maritas Parties failed to provide evidence that authenticated their version of the 2016 settlement agreement. ECF 54, PgID 2015. But failure to authenticate, while possibly a factor supporting a finding of fraud, does not prove that the Maritas Parties have in fact committed fraud on the Court. The SPFPA Parties also tried to appeal to logic, that "it would have made no sense for SPFPA to have given [Mr.] Maritas an expiration date after which he would be free to restart improperly using SPFPA's trademarks." *Id.* at 2016 n.2. That may be true, but courts are not tasked with evaluating the wisdom of unambiguous contract terms. *See Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 468–69 (2005) ("When a court abrogates unambiguous contractual provisions based on its own independent assessment of 'reasonableness,' the court undermines the parties' freedom of contract.") (italics removed); *Lentz v. Lentz*, 271 Mich. App. 465, 472 (2006) ("A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written . . . because doing so respects the freedom of individuals freely to arrange their affairs via contract.") (emphasis omitted) (quoting *Rory*, 473 Mich. at 468). Thus, even if the temporal-limitation term lacks business sense, that fact does not compel the conclusion that the version of the settlement agreement offered by the Maritas Parties was fraudulent.

In the end, the competing agreements offered by the parties do not create a suggestion of fraud. Rather, the two agreements simply show that the parties dispute the terms of the 2016 settlement agreement. Thus, the question of whether the

operative agreement is the document offered by the Maritas Parties or the SPFPA

Parties should be resolved at summary judgment. The motion is accordingly denied.

## CONCLUSION

The Court will grant in part and deny in part the motion to exclude inadmissible evidence by the SPFPA Parties. All text message exhibits except the message found at ECF 51-6, PgID 1631 are excluded. The Pasquale Cascione affidavit is excluded. But no statements from the Maritas affidavit are excluded, and the 2016 settlement agreement offered by the Maritas Parties is not excluded. Last, the Court will not order sanctions under Civil Rule 37(c)(1)(A)–(C) for the above-described procedural violations because exclusion of the evidence is an adequate remedy.

**WHEREFORE**, it is hereby **ORDERED** that the motion to exclude inadmissible evidence [54] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 30, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2023, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager