UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL UNIONS,
SECURITY POLICE AND FIRE
PROFESSIONALS OF AMERICA,
et al.,

Case No. 2:19-cv-10743

HONORABLE STEPHEN J. MURPHY, III

Plaintiffs,

v.

MARITAS, et al.,

Defendants.
_____/

**OPINION AND ORDER DENYING MOTION
FOR SUMMARY JUDGMENT BY THE MARITAS PARTIES [50]**

In the interest of judicial economy, the Court will adopt and incorporate here the introduction section from a previous Opinion and Order, ECF 69, PgID 2387–89. This Order will then resolve a summary judgment motion filed by the Maritas Parties.[1] ECF 50 (motion for summary judgment); ECF 52 (response brief); ECF 53 (reply brief).[2]

### BACKGROUND

SPFPA and LEOSU are competing unions that organize police, security police, special police, protective service officers, security guards, and other security

---

[1] The "SPFPA Parties" are International Unions, Security Police and Fire Professionals of America (SPFPA), David L. Hickey, and Dwayne Phillips. *See* ECF 50, PgID 1454. And the "Maritas Parties" are Law Enforcement Officers Security Unions (LEOSU) and Steven Maritas. *Id.*

[2] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

1

professionals. *Maritas II*,³ ECF 8, PgID 541; ECF 50, PgID 1476 ("It is undisputed that both parties in this case offered union services through direct solicitation, mailing and the [i]nternet in direct competition with each other."); ECF 52, PgID 1747 ("SPFPA and [the] Maritas Parties often compete for the same business as they both seek to represent security professionals."). In 2013 SPFPA sued Steve Maritas in Michigan State court for trademark infringement and breach of a noncompete agreement. ECF 52, PgID 1728; ECF 53, PgID 1977. That lawsuit ended in 2013 with a settlement agreement. ECF 52, PgID 1728; ECF 53, PgID 1977. The next year, SPFPA sued Mr. Maritas again for breach of contract, copyright infringement, and fraud. ECF 52, PgID 1729; ECF 53, PgID 1977. That lawsuit ended in 2016 with a settlement agreement. ECF 52, PgID 1729; ECF 53, PgID 1977.

In 2019 SPFPA sued Mr. Maritas for allegedly breaching the 2013 and 2016 settlement agreements "by violatively using SPFPA's name and acronym." ECF 52, PgID 1729; *see* ECF 53, PgID 1977. The State court found for SPFPA with respect to the 2013 settlement agreement, and SPFPA voluntarily dismissed without prejudice the breach of contract claim regarding the 2016 agreement. ECF 52, PgID 1730; ECF 53, PgID 1977.

In late 2020 SPFPA adopted the slogan, "One Union, One Pride!" ECF 52-2, PgID 1754. SPFPA used the slogan "on its website and social media pages, campaign

---

³ As noted in the Court's previous Opinion and Order, *Maritas II* refers to the second, pre-consolidated matter, *Maritas v. Int'l Unions, Sec. Police & Fire Pros. of Am.* No. 4:20-cv-12544 (E.D. Mich. Sept. 16, 2020). All citations not designated as *Maritas II* are citations to the above-captioned matter, 2:19-cv-10743.

YouTube videos, cards passed out to SPFPA local members, the cover of SPFPA's Constitution and By-Laws, posters, banners, buttons, lanyards, and even water bottles." ECF 52, PgID 1731. And in July 2021, "Maritas posted SPFPA's [s]logan with lion imagery in the background similar to the lion imagery SPFPA uses[] to [LEOSU's] website, but with [LEOSU's] logo next to it." ECF 52, PgID 1730 (citing ECF 50-4, PgID 1488). Mr. Maritas later "made a decision to take [the slogan] down" from the LEOSU website "based on something that happened during the scope of the[] various lawsuits" because he "just didn't want to get involved in it." ECF 52-8, PgID 1868.

**LEGAL STANDARD**

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that

3

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

The Maritas Parties moved for summary judgment on all the counterclaims[4] brought by the SPFPA Parties. *See* ECF 44, PgID 1076–87. The Court will first resolve the motion as to the breach of contract counterclaims. After, the Court will resolve the motion as to the common law trademark infringement counterclaim. Last, the Court will resolve the motion as to the unfair competition counterclaim.

I.   Breach of Contract

To start, the Maritas Parties moved for summary judgment on the breach of contract counterclaims based on the doctrine of res judicata. ECF 50, PgID 1468–71. They also moved for sanctions under Federal Rule of Civil Procedure 11 on the ground that the counterclaims are "frivolous." *Id.* at 1472–73. The SPFPA Parties responded that their breach of contract counterclaims are not barred by the doctrine of res judicata because the claims are based on new alleged breaches by the Maritas Parties. ECF 52, PgID 1734–35. In their reply brief, the Maritas Parties walked back their

---

[4] As explained in the Court's prior Opinion and Order, ECF 69, PgID 2389 n.4, the Court will refer to the claims brought in ECF 44, PgID 1076–87 as counterclaims. *See also* ECF 54, PgID 2017 (SPFPA Parties referring to breach of contract claims as "counterclaims"); Fed. R. Civ. P. 13(b).

4

res judicata argument and their request for Rule 11 sanctions. ECF 53, PgID 1978 ("To the extent that SPFPA is limiting its claim for breach of either the 2013 or 2016 settlement agreements to alleged violations of a common law trademark; then Maritas agrees res judicata does not apply and waives the argument. Based on these assumptions, Maritas also waives any request for sanctions against SPFPA."). The Court will therefore pass over the res judicata argument and the request for Rule 11 sanctions as withdrawn.

Next, the SPFPA Parties argued that the Court should grant summary judgment on their breach of contract claims. ECF 52, PgID 1737–38. The Maritas Parties opposed the request. ECF 53, PgID 1978–80. Because most of the arguments relating to each settlement agreement overlap, the Court will analyze the alleged breaches of both settlement agreements together.

To prevail on a breach of contract claim in Michigan, a plaintiff "must establish by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach.'" *Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 100 (2016) (footnote omitted).

  A. *Valid Contract*

The parties first disputed whether the 2013 and 2016 settlement agreements are valid contracts. ECF 52, PgID 1737; ECF 53, PgID 1978. As to the 2013 agreement, the issue was already resolved by the Oakland County Circuit Court in August 2021. *See* ECF 50-11, PgID 1563–75 (opinion and order granting in part and

5

denying in part cross-motions for summary judgment in *Int'l Union, Sec. Police & Fire Pros. of Am. v. Maritas*, No. 19-173125). There, the Michigan State court found that although the agreement was unsigned, "the signed 2013 Stipulated Order and the unsigned 2013 Settlement Agreement are 'so connected' that the signature appearing on the 2013 Stipulated Order can be said to authenticate the unsigned 2013 Settlement Agreement." *Id.* at 1569. Accordingly, the court found "that the requirements of the statute of frauds are satisfied," and "[t]he 2013 Settlement Agreement, although unsigned, is a valid contract." *Id.* The Maritas Parties countered with a vague statement and without any accompanying analysis that "collateral estoppel does not apply." ECF 53, PgID 1978. But collateral estoppel does apply to the issue of contract formation.

Under the doctrine of collateral estoppel, or issue preclusion, parties are barred from relitigating "issues that have already been actually litigated and lost in a prior action." *Cobbs v. Katona*, 8 F. App'x 437, 438 (6th Cir. 2001) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) and *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999)). "To determine the preclusive effect of a prior [S]tate court judgment, federal courts must apply the preclusion law of the [S]tate in which that prior judgment was rendered." *Lopez v. Union Carbide Corp.*, 83 F. Supp. 2d 880, 884 (E.D. Mich. 2000) (quotation omitted). Under Michigan law, collateral estoppel applies when three elements are met: (1) "a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment"; (2) "the same

6

parties had a full and fair opportunity to litigate the issue[;] and (3) mutuality of estoppel." *Radwan v. Ameriprise Ins. Co.*, 327 Mich. App. 159, 166 (2018).

Here, the question of contract validity was essential to the State court's judgment that the 2013 settlement contract was breached. *See* ECF 50-11, PgID 1567–71. Although the breach alleged in State court differs from the breach alleged here, the analysis of whether the contract is valid is the same. The question was actually litigated by the parties, and the State court issued a final judgment on whether the 2013 settlement agreement was valid. *See* ECF 50-11, PgID 1567–69. The first collateral estoppel element is thus satisfied.

Second, no party argued that they lacked a "full and fair opportunity to litigate" the validity of the 2013 settlement agreement. *Radwan*, 327 Mich. App. at 166. And based on the State court opinion, the parties appeared to provide the court with full briefing on the validity issue. *See* ECF 50-11, PgID 1567 (explaining the arguments from both parties about validity). The second collateral estoppel element is also satisfied.

Third, mutuality of estoppel exists. "Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, the estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 684–85 (2004) (alterations and quotation omitted). The Maritas Parties and the SPFPA Parties each include a party that was present in the State court action. ECF

7

50-11, PgID 1563 (SPFPA versus Steven Maritas). Thus, both parties here are bound by the adjudicated validity of the 2013 settlement agreement. In short, collateral estoppel applies to the issue of contract validity, and the Court will not disturb the State court's finding that "[t]he 2013 Settlement Agreement, although unsigned, is a valid contract." *Id.* at 1569.

As for the 2016 settlement agreement, the parties disputed which version of the contract is the authentic agreement. ECF 53, PgID 1979; *see* ECF 54, PgID 2014–17. The Maritas Parties' version of the agreement materially varies from the SPFPA Parties' version. *Compare* ECF 53-2, PgID 1984–88, *with* ECF 52-13, PgID 1949–53. The State court found "that a question of fact exists relative to whether the Maritas Version of the 2016 Settlement Agreement is a 'fake' as claimed by SPFPA." ECF 50-11, PgID 1572. And for the reasons stated in the Court's earlier Opinion and Order, "there is insufficient evidence to find that the Maritas Parties have" offered a fraudulent version of the 2016 settlement agreement. ECF 69, PgID 2409–11. Like the State court action, no evidence before the Court verifies the operative 2016 settlement agreement. *See* ECF 50-11, PgID 1572. The Court thus finds that there is a genuine issue of material fact as to whether the version of the 2016 settlement agreement offered by the Maritas Parties or the SPFPA Parties is the operative agreement.

  B. *Breach*

Next, the parties disputed whether the Maritas Parties infringed on an SPFPA trademark, which would amount to a breach of both settlement agreements. ECF 52,

PgID 1737; ECF 53, PgID 1979. As will be explained below, there is a genuine issue of material fact as to whether the Maritas Parties infringed on an SPFPA trademark. Accordingly, there is a genuine issue of material fact as to whether the Maritas Parties breached the 2013 settlement agreement.

    C.    *Damages*

There is a genuine issue of material fact on the issue of breach of the 2013 settlement agreement, and there is a genuine issue of material fact on the issue of contract validity as to the 2016 settlement agreement. Thus, the Court need not rule on the issue of damages here.

In sum, although the 2013 settlement agreement is valid, there is a genuine issue of material fact as to whether the Maritas Parties breached the agreement. *See Bank of Am., NA*, 499 Mich. at 100. The Court will deny summary judgment to the SPFPA Parties on its breach of contract counterclaim as to the 2013 settlement agreement. As for the 2016 settlement agreement, there is a genuine issue of material fact as to which version of the agreement is the operative agreement. And because the Court cannot resolve that question, the issue of breach cannot be decided here. Summary judgment is also denied on the breach of contract counterclaim as to the 2016 settlement agreement.

II.    <u>Common Law Trademark Infringement</u>

Before the Court discusses the trademark infringement claim, the Court will reiterate that it will not consider the affidavit from Pasquale Cascione in its analysis

9

of trademark infringement. *See* ECF 69, PgID 2399–404 (excluding the evidence under Civil Rule 37(c)(1) and Evidence Rule 802).

At common law, a plaintiff must "show that (1) its mark was valid," (2) "plaintiff had priority in the mark, . . . (3) defendant's allegedly infringing mark was likely to confuse consumers as to the source of defendant's products or services, and (4) defendant used the allegedly infringing mark." *Janet Travis, Inc. v. Preka Holdings, L.L.C.*, 306 Mich. App. 266, 268–69 (2014) (footnote omitted).[5] The Court will begin its analysis with mark validity.

A. Valid Mark

"Trademarks are valid when they are (1) used in connection with the sale and advertising of products or services, and (2) distinctive, in that consumers understand the mark to designate goods or services as the product of a particular manufacturer or trader." *Movie Mania Metro, Inc. v. GZ DVD's Inc.*, 306 Mich. App. 594, 615–16 (2014) (cleaned up).

The SPFPA Parties claimed that they have "used (and continue[] to use) [the 'One Union, One Pride' slogan]" to advertise their union. ECF 52, PgID 1731. And the SPFPA Parties attached evidence supporting the claim. *See* ECF 52-2, PgID 1756–1811. The Maritas Parties lodged no argument in opposition. *See* ECF 50, PgID 1474–77; ECF 53, PgID 1978, 1980–81. The Court will accordingly find that SPFPA

---

[5] Because the SPFPA Parties sued the Maritas Parties for common law trademark infringement, Michigan law applies. ECF 44, PgID 1084–86 (common law trademark infringement counterclaim); *see* ECF 50, PgID 1474 (applying Michigan law); ECF 52, PgID 1742–48 (same).

10

the "One Union, One Pride" slogan "in connection with the . . . advertising of" their union. *Movie Mania Metro, Inc.*, 306 Mich. App. at 615.

"[T]o determine whether a mark [is] 'distinctive' and thus eligible for trademark protections," courts categorize marks into "four types": "(1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful." *Janet Travis, Inc.*, 306 Mich. App. at 280 (quotation omitted). "'Arbitrary or fanciful' and 'suggestive' marks are inherently distinctive, in that they distinguish a good as coming from a particular source. Accordingly, arbitrary or fanciful and suggestive marks are considered valid trademarks for the purposes of trademark law." *Id.* at 280–81 (internal quotation marks and quotation omitted).

To start, the slogan "One Union, One Pride" is neither a "generic" mark nor an "arbitrary or fanciful" mark. Generic marks "can [] be synonymous with the good or service itself ('apple' is generic when used by an apple orchard) or may describe a broader category to which the particular good or service belongs ('fruit' is also generic when used by an apple orchard)." *Janet Travis, Inc.*, 306 Mich. App. at 281 n.27. "One Union, One Pride" goes beyond describing the union itself. It is not generic.

"An arbitrary mark is [] mismatched to a particular product or service[] because its commonplace meaning has no relationship with that product or service." *Id.* at 280 n.25. And a "fanciful mark is a coined term that has no commonplace meaning whatsoever and is completely fabricated by the trademark holder," such as "Kodak film, Exxon oil, and Clorox bleach." *Id.* (cleaned up). "One Union, One Pride"

11

refers to a union; it is therefore neither mismatched nor fabricated. The slogan is not an arbitrary or fanciful mark.

Furthermore, the "One Union, One Pride" slogan is not a suggestive mark because the phrase describes and directly conveys "an impression of the goods or services on offer." *Id.* at 280 n.26. And the slogan "requires [no] imagination, thought and perception to reach a conclusion as to the nature of the goods." *Id.* (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (1976)). On the contrary, the nature of the union is directly communicated by the slogan. To be sure, the term "One Pride" is a play on words, referring both to the emotion and the lion family unit. *See* ECF 52, PgID 1744 ("Emphasizing that local SPFPA members are 'One Pride' stirs feelings of unity and honor they feel by being associated specifically with SPFPA, not just any union."); *see also* ECF 52-2, PgID 1771, 1773, 1783–84, 1795, 1797, 1799 (SPFPA lion imagery). But even the play on words "conveys an immediate idea of the [] qualities or characteristics of" SPFPA. *Abercrombie & Fitch Co.*, 537 F.2d at 11; *see* ECF 52, PgID 1744.

The slogan "One Union, One Pride" is best categorized as a descriptive mark because the slogan does not "distinguish [the union] as originating from a particular source." *Janet Travis, Inc.*, 306 Mich. App. at 280. The slogan, as a descriptive mark, may only constitute a valid mark if it has acquired a "secondary meaning" such that the slogan "has become associated in the minds of purchasers or customers with the source or origin of goods or services rather than with the goods or services themselves." *Id.* at 282 (internal quotation marks and quotation omitted). "To

12

determine whether a plaintiff's mark has acquired secondary meaning, a court considers (1) the length of use of the symbol or mark, (2) the nature and extent of popularizing and advertising the symbol, and (3) the efforts expended by plaintiff in promoting the connection in the minds of the general public of [their] mark or symbol with a particular product." *Id.* (cleaned up). The Court will first address length of use; after, the Court will address the remaining factors.

### 1. *Length of use*

The parties agreed that when the SPFPA Parties lodged the counterclaim, the "One Union, One Pride" slogan had been in use for about seventeen months. ECF 50, PgID 1480; ECF 52, PgID 1744; ECF 53, PgID 1981. When compared with the descriptive mark in *Janet Travis, Inc.* that had been in use for sixty years, the length of use is very brief. 306 Mich. App. at 284. Michigan courts appear to interpret the length-of-use factor to equate to "long use." *Boron Oil Co. v. Callanan*, 50 Mich. App. 580, 583, 585 (1973); *see, e.g.*, *Burke v. Dawn Donut Sys., Inc.*, 147 Mich. App. 42, 47 (1985) (noting that the length of use was about twenty years). Thus, the seventeen-month use of "One Union, One Pride" by the SPFPA Parties cuts against a finding that the slogan acquired a secondary meaning.

### 2. *Popularizing and advertising and promotion efforts*

The SPFPA Parties argued that they "had been using [the slogan] on virtually all SPFPA advertising efforts—from YouTube videos, to banners, to printing it on water bottles." ECF 52, PgID 1744; *see* ECF 52-2, PgID 1756–1811. They also claimed that their "continuous, repeated use of the [s]logan reflects SPFPA's efforts to

13

promote a conscious connection in the minds of anyone who heard that [s]logan with SPFPA." ECF 52, PgID 1745. The Maritas Parties contended that "SPFPA has not provided any evidence to support [that] the slogan has become associated with SPFPA." ECF 53, PgID 1981. They claimed that a simple Google search showed that other organizations use the words "union" and "pride" in their slogans or names, so the terms are not descriptive enough to create an association with SPFPA. *Id.*; ECF 53-5, PgID 1995–96.

The sparse but competing evidence shows that there is a genuine issue of material fact as to whether the continued and repeated use of the "One Union, One Pride" slogan caused the slogan to acquire a secondary meaning. Although the SPFPA Parties offered no "direct consumer testimony and consumer surveys" to "show the existence of secondary meaning," *Janet Travis, Inc.*, 306 Mich. App. at 284, they did offer evidence that the slogan was used "continuously in order to distinguish SPFPA's union services as coming from SPFPA, as opposed to other unions." ECF 52-2, PgID 1754; *see* ECF 52-2, PgID 1754–55 (list of slogan uses); ECF 52-2, PgID 1756–1811. And the reference to a Google search showing other uses of the terms "union" and "pride" cannot, without more, establish that there is no genuine issue of material fact as to secondary meaning. All told, the Maritas Parties failed to show that there is no genuine issue of material fact that the "One Union, One Pride" slogan failed to acquire a secondary meaning.

14

### B. *Remaining Elements*

Because there is a genuine issue of material fact as to whether the slogan "One Union, One Pride" has acquired a secondary meaning such that the slogan is a valid trademark, the Court need not proceed with the remaining elements of the trademark infringement counterclaim. Summary judgment on the trademark infringement counterclaim is denied.

### III. Unfair Competition

"The gist of an unfair competition case is that the public is so misled that the plaintiff loses some trade by reason of the defendant's deception." *Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*, No. 1:05-cv-655, 2009 WL 891724, at *7 (W.D. Mich. Mar. 31, 2009) (citing *Revlon, Inc. v. Regal Pharmacy, Inc.*, 29 F.R.D. 169, 174 (E.D. Mich. 1961)). "Common law unfair competition also requires the deception and confusion of the public." *Id.* Although the plaintiff need not "show that any person has been actually deceived by defendant's conduct," "[i]t is sufficient to show that such deception will be the natural and probable result of defendant's acts. But either actual or probable deception and confusion must be shown, for if there is no probability of deception, there is no unfair competition." *Weisman v. Kuschewski*, 243 Mich. 223, 228–29 (1928) (emphasis omitted). "The universal test question is whether the public is likely to be deceived." *Id.* at 229.

The Court will deny summary judgment on the unfair competition counterclaim because there is a genuine issue of material fact as to "whether the public is likely to be deceived." *Weisman*, 243 Mich. at 229.

A comparison of the evidence attached to the parties' summary judgment briefs reveals that the same slogan with similar lion imagery was used by both unions. *Compare* ECF 50-4, PgID 1488 ("ONE UNION, ONE PRIDE!" and images of lions), *with* ECF 52-2, PgID 1771 (same). Indeed, the Maritas Parties conceded that the marks were similar. ECF 50, PgID 1476. And neither party disputed that the two unions compete within similar union markets. *Id.* ("It is undisputed that both parties in this case offered union services through direct solicitation, mailing and the [i]nternet in direct competition with each other."); ECF 52, PgID 1747 ("SPFPA and [the] Maritas Parties often compete for the same business as they both seek to represent security professionals."). Given those facts, there is evidence to suggest that "deception will be the natural and probable result of defendant's acts." *Weisman*, 243 Mich. at 229.

Even in light of the patent similarity between the competing unions' respective uses of the slogan and lion imagery, the Maritas Parties failed to explain how their use would not cause confusion among potential or actual union members. *See* ECF 50, PgID 1478–80. Instead, they merely concluded that "[t]here has been no objective evidence to support any probable or actual confusion in the affairs of the parties[ or] deception of the public." *Id.* at 1480. They also countered that "SPFPA has allegedly used the mark for nearly [two] years and has not provided even one testimonial instance of actual confusion." ECF 53, PgID 1981. Although it is difficult to prove a negative—that there was no actual or probable confusion of the public—the Maritas Parties did not support their claim with any substantive analysis at all. *See* ECF 50,

16

PgID 1478–80. Moreover, their argument that SPFPA "has not provided even one testimonial instance of actual confusion" is unhelpful because the SPFPA Parties need not show actual confusion to succeed on a claim of unfair competition. ECF 53, PgID 1981; *see Weisman*, 243 Mich. at 228 ("[I]t is not necessary to show that any person has been actually deceived by defendant's conduct and led to purchase his goods in the belief that they are the goods of plaintiff or to deal with defendant thinking he was dealing with plaintiff."). In the end, the Maritas Parties failed to meet their burden under Rule 56(a). The Court must deny summary judgment on the unfair competition counterclaim.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Maritas Parties' motion for summary judgment [50] is **DENIED** in its entirety.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: March 31, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2023, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager

17